### DENNIS LOGAN v. HOWARD W. JOHNSON.

(Filed 25 September, 1940.)

**1. Master and Servant § 55d—**

The findings of fact of the Industrial Commission, when supported by competent evidence, are binding upon the courts upon appeal, but findings not supported by competent evidence are not conclusive and must be set aside.

**2. Master and Servant §§ 37, 41a—Loss of eye and loss of vision of eye mean total, as distinguished from partial, loss of vision.**

In construing the North Carolina Workmen's Compensation Act, the words of the statute must be taken in their natural or ordinary meaning, and upon such construction the phrases "the loss of an eye" and "total . . . loss of vision of an eye" in prescribing the amount of compensation to be allowed for injury thereto, ch. 120, Public Laws of 1929, sec. 31 (q) (t), mean the state or fact of loss of an eye or total destruction of the vision of an eye as distinguished from the partial loss of vision.

**3. Master and Servant § 41a—Evidence held not to support finding that claimant had suffered total loss of vision of one eye.**

The evidence before the Industrial Commission was to the effect that plaintiff has "slight peripheral vision but only slight perception in center of cornea" of one eye, and that he had only a small percentage of normal vision in the eye. *Held:* The evidence does not support a finding that claimant had total loss of vision in the eye, and such finding and the award of compensation based thereon, is set aside and the cause remanded to the Industrial Commission for a proper finding from the evidence as to the extent or percentage of loss of vision claimant had sustained.

**4. Master and Servant § 52b—**

An unsigned copy of a letter from one physician to another as to the extent or percentage of loss of vision claimant had sustained, is incompetent and has no place in the record and evidence in the cause.

APPEAL by defendant from *Ervin, Special Judge,* at Regular April Term, 1940, of RUTHERFORD.

Proceeding under the North Carolina Workmen's Compensation Act, Public Laws 1929, chapter 120, as amended, for an award to plaintiff, the claimant, Dennis Logan, for injury to and loss of his right eye.

Three hearings have been held before a member of the North Carolina Industrial Commission with regard to the claim in question.

Following the first hearing on 12 November, 1937, the commissioner found as a fact "that the plaintiff sustained injury by accident arising out of and in the course of his employment on 30 May, 1937, when he sustained an injury to his right eye; that as result of such injury plaintiff was totally disabled for a period of 90 days and that plaintiff now has a substantial loss of vision in the right eye, the amount of same to

be determined six or eight months hence." In opinion filed the Commissioner states that Dr. Glenn, who is not an eye specialist, testified that he regularly treated the plaintiff; that he has a marked opacity and no acute vision in the right eye; that Dr. J. F. McGowan, of Asheville, testified that upon first examination the plaintiff had 22/100 vision in the right eye, and on 28 August, 1937, it was 21/100; that in his opinion there would be further improvement; that plaintiff should continue to treat his eye in accordance with the doctor's instructions, and that the percentage of vision of the injured right eye be determined six or eight months from the date of hearing. Thereupon the Commissioner entered an order awarding to plaintiff compensation (1) for the 90 days total disability, and (2) thereafter for the percentage of loss of vision to the right eye to be determined six or eight months from 12 November, 1937. For the latter purpose the case was ordered to "be held open for a reasonable period of time until such time as Dr. McGowan feels that vision should be rated."

At second hearing 30 May, 1939, Dr. C. F. Glenn testified: "In a case like this he can discern objects and can discern daylight from dark. As far as to identify anybody at any distance he was unable to do so. It was my opinion at the last hearing that he was industrially blind and I was not inclined to think it would improve with treatment or time. I examined him yesterday and his condition is unchanged and I think he is industrially blind and I do not think his condition will improve with time or treatment." On cross-examination, the witness further testified: "He can see a blurred object, daylight and dark, but no fingers. He can't make out that sort of thing at all. I know industrial terms experts use in referring to injuries of the eye. I know what the terms 22/100 and 21/100 vision mean. That is the fraction of the normal vision that remains in reference to normal vision." The witness further testified that when the claimant was admitted to the hospital shortly after his injury, he was given treatment for his luetic infection. The Commissioner at this hearing finds as fact (1) that the only issues then involved "were the determination of loss of vision of the plaintiff's right eye, if any, and the additional amount of compensation due him by reason of such loss"; (2) that defendant did not have an opportunity to secure an expert eye specialist as a witness at the time of the hearing "due to the fact that the plaintiff employee had only recently been released from the chain-gang, and upon agreement it is directed that the Industrial Commission designate some eye specialist" to examine plaintiff "and that the report of said eye specialist on the condition of the eye, the right of the plaintiff Dennis Logan shall be considered by the Industrial Commission, or any member of said Commission, as competent evidence in said case and shall become a part of the record of said case."

The Industrial Commission designated "Dr. T. B. Gold, eye specialist of Shelby, North Carolina, as the physician to examine the eye of the plaintiff pursuant to the said agreement."

On 20 September, 1939, Dr. Gold, in letter to Chairman T. A. Wilson, made this report: "I am writing you in regards to Dennis Logan. He has an old scar covering about two-thirds of cornea of right eye on nasal side. The scar is thicker in center than on edges. There is also a scar on temporal side about 11 A. M. The eye is quiet and the scar is not progressing and I would say that his status has not changed in the last year or year and half. He has slight peripheral vision, but only slight perception in center of cornea. The left eye is normal."

After a third hearing held on 21 September, 1939, the Commission rendered an opinion in which, after referring to the report of Dr. Gold, it is stated that: "Dr. Gold gave as his opinion that the plaintiff has 100 per cent loss of vision in the right eye due to the injury by accident." And continuing stated: "Upon all of the competent evidence and the admissions the Commission finds as a fact that the plaintiff now has 100 per cent loss of vision in the right eye which was due to the injury he sustained May 30, 1937, while working for Howard W. Johnson." Pursuant to such finding an award was made for compensation "for 100 weeks for the complete loss of vision in the right eye."

Upon appeal by defendant to the Full Commission, the findings of fact, conclusions of law, and the award at the last hearing were approved, affirmed and adopted as its own. Defendant appealed therefrom to the Superior Court of Rutherford County.

Pending hearing in Superior Court at request of counsel for plaintiff, the Industrial Commission, by supplemental certificate, incorporated as a part of the certified record in this proceeding a copy of letter from Dr. Frank C. Smith, of Charlotte, transmitting to Mr. T. A. Wilson, North Carolina Industrial Commission, copy of an unsigned letter dated 25 October, 1937, from Dr. Smith to Dr. C. F. Glenn regarding plaintiff in which he states, in part, to Dr. Glenn: "This patient has a 100 per cent loss of industrial vision due to scarring of the right cornea. The scar is so dense that the visual loss will be permanent. . . ."

From judgment of Superior Court affirming the award of the Industrial Commission, defendant appeals to the Supreme Court and assigns error.

*Hamrick & Hamrick for plaintiff, appellee.*
*J. S. Dockery and Charles Hutchins for defendant, appellant.*

WINBORNE, J. Upon the record on this appeal we are of opinion and hold that exception by defendant to the judgment below, assigned as error, is well taken.

Findings of fact of the Industrial Commission when supported by competent evidence are binding on the Superior and Supreme Courts. Decisions of this Court uniformly so hold. But, where it appears that a finding of fact upon which the award is based is not supported by competent evidence, the finding is not conclusive and must be set aside. This is the rule likewise uniformly established by decisions of this Court.

The North Carolina Workmen's Compensation Act, Public Laws 1929, chapter 120, section 31, as amended, provides for compensation to be allowed: "(q) For the loss of an eye, sixty per centum of the average weekly wages during one hundred weeks." Then in subsection (t) of said section it is declared: "Total loss of use of a member or loss of vision of an eye shall be considered as equivalent to the loss of such member or eye. The compensation for partial loss of or for partial loss of use of a member or for partial loss of vision of an eye shall be such proportion of the payments above provided for total loss as such partial loss bears to total loss. . . ."

The words used in the statute must be taken in their natural or ordinary meaning. *Borders v. Cline,* 212 N. C., 472, 193 S. E., 826.

The word "loss" is defined by Webster as: "State or fact of being lost or destroyed; ruin; destruction; as the loss of a vessel at sea." The word "lose" is there defined as "To bring to destruction; to ruin; to destroy; . . . to suffer the loss of; to be deprived of; to part with . . . especially in an accidental or unforeseen manner; as .. . . to lose an eye." Hence, the phrases "The loss of an eye" and "Total . . . loss of vision of an eye," as used in the Workmen's Compensation Act, when given the natural or ordinary meaning manifestly indicate the state or fact of loss of an eye or total destruction of the vision of an eye—as distinguished from a partial loss of such vision.

Here there is evidence of loss of a large percentage of vision of the right eye of plaintiff which, when determined, is compensable under the provision of the act. Yet there is no evidence, competent or otherwise, to support the finding of the Commission "that plaintiff now has 100 per cent loss of vision in the right eye." This finding appears to have been predicated upon misinterpretation of the report of Dr. Gold. Reference thereto reveals that plaintiff has "slight peripheral vision, but only slight perception in center of cornea." Dr. Glenn, too, says that plaintiff "can see a blurred object, daylight and dark." Therefore, that finding of fact is set aside and the cause is remanded to the North Carolina Industrial Commission for further consideration as to the extent of partial loss of vision plaintiff has sustained to his right eye in accordance with this opinion.

As the case goes back to the Industrial Commission it is appropriate to say that even though there may be other testimony to the same effect,

the unsigned copy of letter of 25 October, 1937, from Dr. Smith to Dr. Glenn, to which defendant excepted, is incompetent, and has no place in the record and evidence in the case.

Other assignments need not now be considered.

Error and remanded.