JESS YOUNG, EMPLOYEE, v. WHITEHALL COMPANY, INC., EMPLOYER, AND LIBERTY MUTUAL INSURANCE COMPANY, CARRIER.

(Filed 20 October, 1948.)

**1. Master and Servant § 40f—**

The provisions of the N. C. Workmen's Compensation Act relating to asbestosis and silicosis will be construed upon the basis that the remedies were provided with reference to the peculiar nature and incidents of these diseases.

**2. Same—**

The provisions of the N. C. Workmen's Compensation Act relating to asbestosis and silicosis were designed to affect the following objects: (1) To prevent employment in occupations with attendant dust hazards of unaffected persons peculiarly susceptible to asbestosis or silicosis; (2) to secure compensation to those workers affected with the diseases whose principal need is compensation; and (3) to provide compulsory changes of occupations for those workmen affected by asbestosis or silicosis, whose primary need is removal to employments without dust hazards. G. S., 97-52; G. S., 97-54 to 97-76.

**3. Same—**

A worker suffering from asbestosis or silicosis is disabled as defined by G. S., 97-54, if he is by reason of the disease incapacitated "from performing normal labor in the last occupation in which remuneratively employed," and the distinction between this definition and the definition of incapacity from other diseases or injury, G. S., 97-2, is highly significant in construing the provisions of the statute relating to asbestosis and silicosis, and must have been made to prevent unjust and oppressive consequences which might arise from the indiscriminate compulsion of workers suffering from these diseases to transfer to other employments.

**4. Statutes § 5a—**

Where a statute is ambiguous, resort must be had to judicial construction to ascertain the legislative will.

**5. Same—**

In construing a statute the court should consider the language of the statute, the mischief sought to be avoided and the remedies intended to be applied.

**6. Same—**

If the words of a statute permit, the court should not adopt a construction which will lead to unjust, oppressive or absurd consequences.

**7. Master and Servant § 40f—**

The provision of G. S., 97-61, for the compulsory change of occupation by a worker affected by asbestosis or silicosis to "employment in some other occupation" contemplates a transfer only when it appears to the Commission that there is a reasonable basis for the conclusion that the

employee possesses the actual or potential capacity of body and mind to work with substantial regularity during the foreseeable future in some gainful occupation free from the hazards of asbestosis or silicosis.

**8. Master and Servant § 51—**

A summary order of the Industrial Commission directing that an employee be removed from employment having attendant hazards of silicosis, and stipulating that the employee is entitled to compensation as stipulated in G. S., 97-61, does not preclude the worker from contesting before the Industrial Commission the applicability of the statute to him, since such order is entered without notice or hearing.

**9. Master and Servant § 55d—**

Where a material finding of fact of the Industrial Commission is not supported by evidence and other findings are insufficient for a proper determination of the cause, the Superior Court properly sets aside the award and remands the cause to the Industrial Commission.

**10. Master and Servant § 40f—**

Evidence that plaintiff could do "light work" if no silicosis dust were involved is insufficient to support a finding that he was not disabled from doing "ordinary work," since the two terms are not synonymous.

**11. Same—**

The fact that a worker performed his duties with regularity up until the date he was dismissed because he was affected with silicosis does not require a finding that he was not disabled at that time as defined by G. S., 97-61.

**12. Same—**

The statute recognizes that silicosis is a progressive disease and provides for compensation if disablement results at any time within two years after the last exposure to silica dust.   G. S., 97-58.

**13. Same—**

If an employee is disabled by silicosis from performing normal labor in an occupation subject to the hazard of silica dust, such worker is entitled to ordinary compensation under the general provisions of the Workmen's Compensation Act unless the Industrial Commission further finds that there is a reasonable basis for the conclusion that he shows the actual or potential capacity of body and mind to work with substantial regularity during the foreseeable future in another occupation free from this hazard, and findings as to disablement and employability in other occupations is necessary for a proper determination by the Commission of the applicability of G. S., 97-61.

APPEAL by defendants from *Moore, J.,* at March Term, 1948, of MITCHELL.

This is a proceeding in which the plaintiff, Jess Young, asserts that he has suffered permanent and total disablement by the occupational disease of silicosis and asks compensation accordingly of the defendants,

Whitehall Company, Incorporated, his last employer, and Liberty Mutual Insurance Company, its insurance carrier, under the general provisions of the North Carolina Workmen's Compensation Act. The defendants concede that all parties are subject to the act, assert that plaintiff is a proper subject for compulsory change of occupation under G. S., 97-61, accept liability to plaintiff for the restricted compensation and readjustment benefit specified in G. S., 97-61, and maintain that plaintiff is not entitled to any further relief under any other provisions of the act.

The data set out in this paragraph is gleaned from records kept by the North Carolina Industrial Commission, the Advisory Medical Committee, and the Division of Industrial Hygiene of the State Board of Health, and received in evidence without objection at the hearing. Plaintiff was born 14 May, 1901. He became a miner at seventeen years of age, and earned his living by mining kaolin, mica, and feldspar from that time until 24 May, 1946, when he was denied further employment in the mining industry on account of silicosis. While such does not appear as an absolute fact, it is intimated that all of the exposure of the plaintiff to the inhalation of silica dust took place in North Carolina. Be this as it may, he spent the seven years next preceding 24 May, 1946, working in the feldspar mines of his last employer, the Whitehall Company, in this State. On various occasions, he was examined for silicosis in conformity to G. S., 97-60. It was observed as early as 27 October, 1936, that he suffered fibrosis of the lungs and shortness of breath, symptomatic of the presence of silicosis in some degree. X-ray photographs at subsequent examinations disclosed a progressive increase in the fibrotic condition of his lungs. Pursuant to a recommendation made by the Division of Industrial Hygiene in September, 1939, plaintiff was transferred to open cut mining in order that his exposure to silica dust might "be considerably less than that usually found in underground mining." The physicians making the statutory examinations in 1944, 1945, and 1946, found that the plaintiff was suffering from the second of the three recognized stages of silicosis, and urged that he "be removed from any further dusty exposure." On 24 May, 1946, plaintiff was laid off by his last employer, the Whitehall Company, because he had silicosis, and notice of his claim of occupational disease disability was filed with the Industrial Commission. Four days later, the Industrial Commission summarily issued the following order to the plaintiff:

"Upon the completion of the studies of your recent examination, the Advisory Medical Committee has advised the Commission that you have silicosis and that it is inadvisable for you to continue working in siliceous dust. In this the Commission concurs. The Commission finds as a fact that you will be benefited by being taken out of your present employ-

ment with the Whitehall Company, and hereby directs that you be removed from such hazardous employment within 60 days from date of this letter, unless for special reason this time should be extended upon approval of the Commission. . . . The Commission hopes that you can be transferred to some non-dust-hazardous job with your present employer; but if not, you are entitled to be compensated as for temporary total disability until you can obtain employment in some other occupation in which there is no hazard of such occupational disease. Compensation is limited to 20 weeks without dependents, 40 weeks with dependents, and for special training benefits not to exceed $300 and $500 respectively. Read Section 97-61. Provided your exposure meets the requirements of Section 97-63."

The plaintiff offered evidence before the hearing Commissioner tending to show that he had not been able to do any work whatever subsequent to 24 May, 1946, because of shortness of breath and incessant pain in his chest resulting from silicosis. His medical witness, Dr. C. D. Thomas, Director of the Western North Carolina Sanatorium, expressed the opinion based upon his knowledge of the plaintiff's condition that the plaintiff was actually incapacitated by silicosis from performing normal labor in the last occupation in which he was remuneratively employed, and that the plaintiff's disease was progressing and would probably become worse.

The defendants presented testimony before the hearing Commissioner tending to show that the plaintiff worked with regularity until 24 May, 1946; that subsequent thereto he applied for and obtained unemployment compensation for twenty weeks, representing to the North Carolina Unemployment Compensation Commission that he was willing to work if he could find something light; and that after his removal from work in the feldspar mine of the Whitehall Company he declined to accept vocational training tendered him by the State Division of Vocational Rehabilitation upon the ground that he "did not figure that he could handle a job." The defendants offered Dr. Otto J. Swisher, Director of the Division of Industrial Hygiene of the State Board of Health, as a medical witness. Dr. Swisher based his testimony upon the case history of the plaintiff and certain X-ray photographs rather than upon any personal knowledge of the plaintiff's state. He expressed the opinion that the plaintiff was afflicted by the first stage of silicosis, and that he "could do light work if there was no silica dust involved." He stated on cross-examination that in his judgment the plaintiff was actually incapacitated by silicosis from performing normal labor in the last occupation in which he was employed.

Upon the evidence adduced, the hearing Commissioner made the following findings of fact, conclusions of law, and award: "The Commis-

sioner finds it as a fact that the claimant is not disabled from doing ordinary work. However, the Commissioner does find that it is for the best interest of the claimant not to work in a dusty trade; and it is, therefore, directed that he be not employed by any other person in a dusty occupation. The Commissioner does find, however, that the claimant is entitled to the benefits provided in the Act, Section 97-60 and 97-61, where an employee is removed from the employment for the good of his health and is not disabled from doing work in which there is no dust hazard. The Commissioner further finds that the claimant in this case is a married man and has a family and is, therefore, entitled to forty weeks disability based upon his wages. It is, therefore, directed that an award issue requiring the defendants to pay the claimant compensation for a period of forty weeks at $21.00 per week, and all hospital and medical bills up to the date of this order when submitted to and approved by the Industrial Commission."

The plaintiff appealed to the Full Commission, which affirmed the findings of fact, conclusions of law, and award of the hearing Commissioner. The plaintiff then prosecuted an appeal to the Superior Court of Mitchell County, where the proceeding arose, and the Superior Court entered judgment setting aside the award of the Industrial Commission upon the ground that the findings of fact were insufficient for a proper determination of the questions raised and remanding the proceeding to the Industrial Commission for further findings. The defendants thereupon appealed to this Court from the judgment of the Superior Court.

*Proctor & Dameron for plaintiff, appellee.*
*Harkins, Van Winkle & Walton for defendants, appellants.*

ERVIN, J. As originally adopted in 1929, the North Carolina Workmen's Compensation Act provided merely for compensation for the death or disability of a workman resulting from injury by accident arising out of and in the course of his employment. G. S., 97-2. In 1935, an amendment broadened the scope of the Act by making compensable twenty-five designated occupational diseases, including asbestosis and silicosis. G. S., 97-53.

In thus extending the coverage of the statute, the Legislature expressly decreed that disablement or death of a workman from a designated occupational disease "shall be treated as the happening of an injury by accident within the meaning of the North Carolina Workmen's Compensation Act and the procedure and practice and compensation and other benefits provided by said act shall apply in all such cases *except as hereinafter otherwise provided.*" G. S., 97-52. It is *otherwise provided*

in later sections of the amending statute with respect to asbestosis and silicosis in several material particulars. G. S., 97-54, to G. S., 97-76.

A proper consideration of the special provisions of the statutes relating to asbestosis and silicosis must rest upon a conviction that in passing these laws the Legislature gave due heed to the nature of these diseases.

The definition of silicosis itself makes it plain that the legislators approved the amendment covering occupational diseases with full knowledge that silicosis is a disease of the lungs contracted by breathing air containing silica dust. G. S., 97-62. Besides, an analysis of the pertinent sections as a whole indicates that the lawmakers acted with an awareness of the discoveries of medicine and industry that silicosis is characterized by shortness of breath, decreased chest expansion, lessened capacity for work, reduced vitality, and a marked susceptibility to tuberculosis; that the average time before symptoms of the disease develop is from ten to fifteen years; that silicosis is incurable; that whether silicosis will result in death or disability to a particular worker is dependent on his susceptibility to the affliction and the duration and intensity of his exposure to silica dust; and that silicosis is a progressive disease, the lung changes continuing to develop for one or two years after complete removal of the worker from the silica hazard. Reed and Harcourt: The Essentials of Occupational Diseases, pages 161-174; Reed and Emerson: The Relation Between Injury and Disease, pages 182-186; Goldstein and Shabat: Medical Trial Technique, pages 773-776; Gray: Attorneys' Textbook of Medicine (2d Ed.), pages 1060-1070.

We are dealing here with silicosis alone. But as it and asbestosis are always coupled in the statutes, it is well to note that asbestosis is a disease of the lungs occurring in persons working in air laden with asbestos dust. G. S., 97-62. It is infrequent as compared to silicosis, but has somewhat similar symptoms and consequences. Gray: Attorneys' Textbook of Medicine (2d Ed.), pages 913-925; Goldstein and Shabat: Medical Trial Technique, pages 776-777.

When the special provisions of the occupational disease amendment relating to asbestosis and silicosis are read in their entirety, it is apparent that they are designed to effect these objects: (1) To prevent the employment of unaffected persons peculiarly susceptible to asbestosis or silicosis in industries with dust hazards; (2) to secure compensation to those workers affected with asbestosis or silicosis, whose principal need is compensation; and (3) to provide compulsory changes of occupations for those workmen affected by asbestosis or silicosis, whose primary need is removal to employments without dust hazards.

It is to be noted that there is a radical difference between the criterion of disability in cases of asbestosis and silicosis and that of disability in cases of injuries and other occupational diseases. An employee is dis-

abled by injury or an ordinary occupational disease within the purview of the Workmen's Compensation Act only *if he suffers incapacity because of the injury or disease to earn the wages which he was receiving at the time of the injury or disease in the same or any other employment.* G. S., 97-2. But a worker is disabled in cases of asbestosis or silicosis *if he is "actually incapacitated, because of such occupational disease, from performing normal labor in the last occupation in which remuneratively employed."* G. S., 97-54. The distinction in tests is highly significant, and arises out of the legislative consciousness that any attempt to compel an indiscriminate transfer of workers affected by asbestosis or silicosis from their accustomed occupations to other employments under the economic threat of deprivation of compensation would inevitably lead to unjust and oppressive consequences because of their doubtful capacity to engage in other work or because of the inherent difficulty of forecasting the courses of their diseases. With a view to averting such unjust and oppressive results, the Legislature established the general rule that an employee becoming disabled by asbestosis or silicosis within the terms of the specific definition embodied in G. S., 97-54, should be entitled to ordinary compensation measured by the general provisions of the Workmen's Compensation Act. G. S., 97-64.

Moreover, it is clearly implicit in the special provisions relating to asbestosis and silicosis that the lawmaking body did not contemplate that a worker suffering disablement by asbestosis or silicosis within the meaning of G. S., 97-54, should forfeit any right to ordinary compensation under the general provisions of the Act by voluntarily transferring his activities from an industry with dust hazards to an employment where no such hazards prevail. But the General Assembly did recognize that under exceptional circumstances salutary effects would follow a forced change of occupation by a worker affected by asbestosis or silicosis. Consequently, the Legislature enacted G. S., 97-61, which reads, in part, as follows:

"Where an employee, though not actually disabled, is found by the Industrial Commission to be affected by asbestosis and/or silicosis, and it is also found by the Industrial Commission that such employee would be benefited by being taken out of his employment and that such disease with such employee has progressed to such a degree as to make it hazardous for him to continue in his employment and is in consequence removed therefrom by order of the Industrial Commission . . ., he shall be paid compensation as for temporary total or partial disability, as the case may be, until he can obtain employment in some other occupation in which there are no hazards of such occupational disease; Provided, however, compensation in no case shall be paid for a longer period than twenty weeks to an employee without dependents, nor for a longer period

than forty weeks to an employee with dependents, and in either case said period shall begin from the date of removal from the employment, unless actual disablement from such disease results later and within the time limited in section 97-58."

Unhappily, the phraseology of G. S., 97-61, is not altogether free from ambiguity. Hence, the Court must resort to construction to ascertain the legislative will. In so doing, the Court should consider the language of the statute, the mischiefs sought to be avoided, and the remedies intended to be applied. *Hunt v. Eure,* 188 N. C., 716, 125 S. E., 484; *Alexander v. Johnston,* 171 N. C., 468, 88 S. E., 785. Furthermore, if words will permit, the Court should not adopt a construction which will lead to unjust, oppressive, or absurd consequences. *S. v. Earnhardt,* 170 N. C., 725, 86 S. E., 960.

G. S., 97-61, contains extreme sanctions calculated to effect the compulsory removal of the workers to whom it applies from industries with dust hazards to other work free from such hazards. Under its provisions, a worker falling within its scope may be barred from the only trade he knows and forced to seek his livelihood in what is to him a strange field of endeavor. At the same time, he may find an apparently just claim to ordinary compensation under the general provisions of the Act drastically curtailed while he is in quest of new employment by the provision that compensation shall not be paid in any case "for a longer period than twenty weeks to an employee without dependents, nor for a longer period than forty weeks to an employee with dependents." If he is removed from his employment in an industry with dust hazards by order of the Industrial Commission in conformity to the statute and "thereafter engages in any occupation which exposes him to the hazards of silicosis and/or asbestosis without first having obtained the written approval of the Industrial Commission, neither he, his dependents, personal representative nor any other person shall be entitled to any compensation for disablement or death from silicosis and/or asbestosis." If he seeks and obtains permission from the Industrial Commission to continue in his hazardous employment as an alternative to forced change of occupation, he must "waive in writing his right to compensation for any aggravation of his condition that may result from his continuing in his hazardous occupation; but in the event of total disablement and/or death as a result of asbestosis and/or silicosis with which the employee was so affected compensation shall nevertheless be payable, but in no case, whether for disability or death or both, for a longer period than one hundred (100) weeks."

It is well to note the meaningful language used by the Legislature in authorizing the Industrial Commission to compel a workman embraced by G. S., 97-61, to transfer from an industry in which he is subject to

the hazards of asbestosis or silicosis to "employment in some other occupation in which there are no hazards of such occupational disease." The term "occupation" denotes a vocation, trade, or business in which a person engages as the means of making a livelihood. *Dorrell v. Norida Land & Timber Co.,* 53 Idaho, 793, 27 P. (2d), 960; *Harper v. England,* 124 Fla., 296, 168 S., 403; *Sovereign, W. O. W. v. Craft,* 208 Ala., 467, 94 S., 831; *Everson v. General Accident Fire & Life Assur. Corp.,* 202 Mass., 169, 88 N. E., 658; *Joliff v. State,* 53 Tex. A. R., 61, 109 S. W., 176. The word "employment," as used here, implies continuity and some degree of permanency of occupation for hire or profit. *Stevens v. Modern Woodmen of America,* 127 Wis., 606, 107 N. W., 8, 7 Ann. Cas., 566.

Obviously, the Legislature enacted G. S., 97-61, for the paramount purpose of securing to an affected worker undergoing a compulsory change of occupation an independent position as a wage earner in some work free from dust hazards. When the language of the statute is considered in the light of the mischief sought to be avoided and the remedies intended to be applied, it becomes manifest that the Legislature has authorized the Industrial Commission to order a forced change of occupation for an employee affected by asbestosis or silicosis only in case it appears to the Commission that there is a reasonable basis for the conclusion that such employee possesses the actual or potential capacity of body and mind to work with substantial regularity during the foreseeable future in some gainful occupation free from the hazards of asbestosis and silicosis. This construction of the statute finds emphatic support in the provision that where "the forced change of occupation shall in the opinion of the Industrial Commission require that the employee be given special training in order to properly readjust himself, there shall be paid for such training and incidental traveling and living expenses an additional sum which shall not exceed three hundred ($300.00) dollars in the case of an employee without dependents, and which shall not exceed five hundred ($500.00) dollars in the case of an employee with dependents." Moreover, a contrary interpretation must necessarily be based upon the absurd premise that the lawmakers legislated in ignorance of, or with indifference to, the self-evident facts that the incapacity of a workman affected by asbestosis or silicosis to adapt himself to new employment or the progression of his disease may render it impossible for him to obtain or follow a gainful occupation in a new sphere of activity.

The task of applying the law to the case at bar still remains.

The Industrial Commission properly permitted the plaintiff to contest in this proceeding the applicability of G. S., 97-61, to him. The summary order made by the Commission in May, 1946, was not intended to

foreclose any of his rights against his last employer and its insurance carrier. Furthermore, such order was entered without notice or hearing.

We are constrained to hold upon the record here presented that the Superior Court was justified in setting aside the award and remanding the cause to the Industrial Commission because the evidence does not support the finding that the plaintiff "is not disabled from doing ordinary work" and the other findings of fact are insufficient for a proper determination of the questions raised. *Logan v. Johnson,* 218 N. C., 200, 10 S. E. (2d), 653; *Dependents of Poole v. Sigmon,* 202 N. C., 172, 162 S. E., 198; *Farmer v. Lumber Co.,* 217 N. C., 158, 7 S. E. (2d), 376.

When viewed in the light most adverse to him, the evidence merely tended to show that the plaintiff "could do light work if there were no silica dust involved." Light work and ordinary work are not synonymous in the realm of manual labor. We cannot agree with the assertion of the defendants that the finding here considered is both supported and required by the fact that the plaintiff worked with regularity in the mine of the Whitehall Company until 26 May, 1946. This contention scarcely comports with the records of the examinations held under G. S., 97-60, reciting that the examining physician had theretofore thrice concluded that plaintiff was suffering from silicosis in its second stage. Indeed, such records suggest that plaintiff may have been making his "heart and nerve and sinew serve their turn long after they are gone." However this may have been, the Legislature recognizes that silicosis is a progressive disease, and provides that an employer may be held liable for compensation for silicosis if disablement results at any time within two years after the last exposure to the disease. G. S., 97-58. The hearing here was not held until approximately eleven months after plaintiff's labors ceased.

Manifestly, the questions arising in this cause cannot be determined in the absence of a finding as to whether the plaintiff is actually incapacitated because of silicosis from performing normal labor in the last occupation in which he was remuneratively employed. If the Industrial Commission should find that plaintiff is disabled by silicosis in this sense, the plaintiff would be entitled to ordinary compensation under the general provisions of the Workmen's Compensation Act, unless the Industrial Commission further finds that there is a reasonable basis for the conclusion that the plaintiff possesses the actual or potential capacity of body and mind to work with substantial regularity during the foreseeable future in some gainful occupation free from the hazards of asbestosis and silicosis.

For the reasons given, the judgment of the Superior Court is

Affirmed.