FRANK DEREBERY v. PITT COUNTY FIRE MARSHALL

No. 456PA85

(Filed 29 August 1986)

1. **Master and Servant § 71— workers' compensation—computation of weekly wage—wages from two part-time jobs to be considered**

   The Court of Appeals erred in upholding the Industrial Commission's refusal to take into account plaintiff's wages from both part-time employments to compute the average weekly wage plaintiff earned at his principal employment.

2. **Master and Servant § 69— workers' compensation—award of wheelchair accessible housing proper**

   Pursuant to N.C.G.S. § 97-29 an employer's obligation to furnish "other treatment or care" may include the duty to furnish alternate, wheelchair accessible housing. In this case the Industrial Commission properly required defendant to furnish such alternate housing where it found that plaintiff's existing quarters were not suitable for his needs as a permanent and totally disabled person and the owner of the home which plaintiff shared with his parents was not willing to make permit structural changes in the house.

   Justice BILLINGS dissenting in part and concurring in part.

   Chief Justice BRANCH and Justice MEYER join in this dissenting opinion.

ON plaintiff's petition for further review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 76 N.C. App. 67, 332 S.E. 2d 94 (1985), in part reversing a workers' compensation

award and in part affirming the denial of an award by the Industrial Commission.

*Marvin Blount, Jr. and Charles Ellis for plaintiff appellant.*

*Teague, Campbell, Dennis & Gorham by C. Woodrow Teague and Linda Stephens for defendant appellee.*

*Academy of Trial Lawyers by Paul J. Michaels and Gregory M. Martin, amicus curiae.*

EXUM, Justice.

This is a workers' compensation case. The parties stipulated that plaintiff, Frank Leslie Derebery, (1) sustained an injury by accident arising out of and in the course of employment as a volunteer fireman with defendant, Pitt County Fire Marshall, and (2) is totally and permanently disabled as a result of that injury. The Industrial Commission computed plaintiff's average weekly wages with reference to the higher paid of two part-time employments which plaintiff held. The Commission also ordered defendant to provide plaintiff with a wheelchair accessible place to live.

Both parties appealed to the Court of Appeals. The plaintiff contended that the Commission erred in refusing to combine his wages from both employments to compute his average weekly wages. Defendant contended that the award of housing was not permitted under the Workers' Compensation Act. The Court of Appeals, relying on *Barnhardt v. Cab Co.*, 266 N.C. 419, 146 S.E. 2d 479 (1966), held that the Commission properly refused to combine plaintiff's wages because the higher paid of the two was the "employment wherein he principally earned his livelihood," as defined by N.C.G.S. § 97-2(5).[1] The Court also held that the provision of N.C.G.S. § 97-29[2] "requiring payment for 'other treatment or care' . . . can[not] be reasonably interpreted to extend the liability to provide a residence for an injured employee." *Derebery v. Fire Marshall*, 76 N.C. App. at 72, 332 S.E. 2d at 97.

The questions presented by this appeal are whether the Court of Appeals erred in (1) affirming the Commission's refusal

---

1. This statute is reprinted *infra*, p. 196.

2. This statute is reprinted *infra*, p. 199.

to consider both of plaintiff's part-time employments when calculating his average weekly wage, and (2) reversing the Commission's award of wheelchair accessible housing. We answer both questions affirmatively and reverse the Court of Appeals decision on both points.

## I.

At the time he was injured plaintiff was single, nineteen years old and lived with his parents as he had all his life. He worked part time for Sonic Drive-In earning $74.41 a week and part time for Bill Askews Motors earning $87.40 a week.

Plaintiff's accident paralyzed his legs. He will always have to rely principally on a wheelchair for mobility. Plaintiff's physician stated, "with him [plaintiff] essentially being in a wheelchair almost entirely he would need architecturally accessible housing."

Several months after the accident plaintiff received rehabilitation therapy. Plaintiff became capable of living independently. During the time at the rehabilitation center, he expressed a desire to live apart from his parents.

Plaintiff returned to his parents' rented home after the stint at the rehabilitation center. The owner of the home has refused to permit structural modifications to the house. The rear entrance and four of the eight rooms in the house, including the kitchen and bathroom, will not admit plaintiff's wheelchair. As a result, plaintiff cannot get to the stove, must take sponge baths and use a portable commode chair.

Plaintiff introduced into evidence plans for a mobile home, the Enabler, which was designed to accommodate a wheelchair. A registered nurse for the Industrial Commission, Jerri McLamb, testified:

> I feel that the mobile home described in Plaintiff's Exhibit Number 1 would meet Leslie's needs. I am working with five or six paraplegics through my job with the North Carolina Industrial Commission. It is also important to deal with the emotional needs that occur with spinal cord injuries. The emotional problems are certainly most important and that will determine how functional they're going to be and how well they can be rehabilitated.

With this evidence before it, the Commission, adopting the Opinion and Award of the deputy commissioner, made the following pertinent findings and conclusions of law:

FINDINGS OF FACT

. . . .

2. During 1982 and up until 4 March 1983 plaintiff worked on a part time basis for Sonic Drive-In Theater. His average weekly wage with such theater was $74.41.

3. In late 1982 or early 1983 plaintiff also started a job with Bill Atkins [sic] Motors and worked for such company until 4 March 1983. His average weekly wage with the motor company was $87.40. His principal employment was with the motor company and he principally earned his livelihood in such employment.

4. After receiving treatment for his injury by accident plaintiff returned to his home to live with his mother and father. Such home is not suitable for plaintiff's needs as a permanent and totally disabled person. However, the owner of the home does not desire any changes made in his property and no changes have, therefore, been made in the interior of the home.

5. Plaintiff needs to live alone. He is able to take care of his own personal needs. Defendant should furnish plaintiff with a completely wheelchair accessible place to live and provide all reasonable and necessary care for plaintiff's well-being.

CONCLUSIONS OF LAW

1. Plaintiff is permanently and totally disabled as a result of his injury by accident and he is, therefore, entitled to compensation at the rate of $58.27 per week commencing on the date of his accident and continuing for his lifetime. G.S. 97-29; G.S. 97-2(5); . . .

2. Defendant shall furnish plaintiff with all reasonable and necessary treatment or care for the well-being of plaintiff which includes an appropriate place for plaintiff to live in view of his condition.

Upon the foregoing findings of fact and conclusions of law, the Commission entered an award that defendant shall "pay plaintiff compensation at the rate of $58.27 per week and furnish plaintiff with an appropriate place to live in view of his disabled condition . . . ."

II.

[1] Plaintiff contends first that the Court of Appeals erred in affirming the method employed by the Industrial Commission to calculate plaintiff's average weekly wages. At the time plaintiff was injured he was earning $74.41 working part time for one employer and $87.40 per week working part time for another employer. The Commission considered only the wages earned in the employment where plaintiff earned the greater wages to calculate his average weekly wage. Plaintiff contends the Commission should have considered the wages in both part-time employments. We agree.

The last paragraph of N.C.G.S. § 97-2(5) provided on the date of plaintiff's accident:

> In case of disabling injury or death to a volunteer fireman or member of an organized rescue squad or duly appointed and sworn member of an auxiliary police department organized pursuant to G.S. 160A-282 or senior members of the State Civil Air Patrol functioning under Article 11, Chapter 143B, under compensable circumstances, compensation payable shall be calculated upon the average weekly wage the volunteer fireman or member of an organized rescue squad or member of an auxiliary police department or senior member of the State Civil Air Patrol was earning in the employment wherein he principally earned his livelihood as of the date of injury.

N.C.G.S. § 97-2(5) (1979). The Commission interpreted the statute as if the legislature employed the word "principally" to distinguish among possible nonvolunteer fire department jobs a volunteer fireman may hold. The cardinal rule of statutory construction is that legislative intent controls. In seeking to ascertain this intent, courts should consider the language of the statute, the spirit of the Act and what the statute seeks to accomplish. *Crumpton v. Mitchell*, 303 N.C. 657, 281 S.E. 2d 1 (1981); *Stephenson v. Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972). The statute does

contemplate that persons to whom it applies might have multiple employments. The context of the statute, however, demarcates a person's voluntary and remunerative employments. The legislature employed the term "principally" to distinguish the fireman's volunteer employment from his other, remunerative employment or employments, *i.e.*, "the employment wherein he . principally earned his livelihood." The statute insures that the injured volunteer fireman receives compensation commensurate with his proven earning ability as demonstrated by the wages he receives for work done other than in his capacity as a volunteer fireman.

Our interpretation comports with the purpose of the average weekly wage basis as a measure of the injured employee's earning capacity. *See* A. Larson, *The Law of Workmen's Compensation* § 60.00 (1986). This purpose is reflected in the second paragraph of N.C.G.S. § 97-2(5) which states that if all other statutorily provided measures for computing average weekly wages fail, an employee's average weekly wages must be determined by calculating "the amount which the injured employee would be earning were it not for the injury." N.C.G.S. § 97-2(5).

Defendant cites *Barnhardt v. Cab Co.*, 266 N.C. 419, 146 S.E. 2d 479 (1966), in support of his argument that the Commission properly refused to combine plaintiff's earnings to calculate his average weekly wage. In that case claimant worked full time for National Cash Register Company at a weekly wage of $68.00. The claimant also was employed by the Yellow Cab Company part time at a weekly wage of $26.90. Plaintiff was shot in the head and became totally and permanently disabled while working for the cab company. The Industrial Commission combined plaintiff's weekly wages in the part-time and full-time employments to arrive at his average weekly wage. The superior court affirmed the Industrial Commission's award. This Court reversed: "We hold that, in determining plaintiff's average weekly wage, the Commission had no authority to combine his earnings from the employment in which he was injured with those from any other employment." *Barnhardt v. Cab Co.*, 266 N.C. at 429, 146 S.E. 2d at 486. The Court reasoned that combining wages would be unfair to the employer's carrier who charged premiums based on the amount of compensation paid the employee and also to the employer who would have to pay higher premiums.

The Court also made the following observation in an effort to strengthen its holding:

It is also noted that, even in making the exception for volunteer firemen, the North Carolina Legislature did not permit a combination of wages, but adopted as its basis the wages of his principal employment. Had plaintiff here been injured while serving as a volunteer fireman, instead of while driving a taxi, his compensation would have been based on his average weekly wages from National.

*Id.* at 429, 146 S.E. 2d at 485 (emphasis in original omitted).

*Barnhardt* is distinguishable. Plaintiff here was totally and permanently disabled working as a volunteer fireman, not while working for either of his two part-time employers. Furthermore, the justification relied on by the Court in rendering that decision does not apply here. Defendant and its carrier must have known that a volunteer fireman would be employed in another job or jobs and receive compensation therefrom. The dictum in *Barnhardt* which suggests that N.C.G.S. § 97-2(5) does not permit a combination of a volunteer fireman's outside wages is overruled.

We hold the Court of Appeals erred in upholding the Commission's refusal to take into account plaintiff's wages from both employments to compute the average weekly wage plaintiff earned at his principal employment.

III.

[2] Plaintiff next contends that the Court of Appeals erred by reversing the Industrial Commission's award insofar as it required defendant to furnish plaintiff with wheelchair accessible housing.

Before and after his accident, plaintiff has lived with his parents in their rented home. The owner of the house refuses to allow plaintiff's family to modify the house structurally to accommodate plaintiff's wheelchair. Defendant repeatedly has expressed a willingness to provide structural modifications to plaintiff's present residence. He argues, however, that the Act stops short of compelling him to furnish plaintiff with alternate housing accessible by wheelchair.

The parties agree the applicable statutory provisions are contained in the following part of N.C.G.S. § 97-29:

In cases of total and permanent disability, compensation, including reasonable and necessary nursing services, medicines, sick travel, medical, hospital, and other treatment or care of [sic] rehabilitative services shall be paid for by the employer during the lifetime of the injured employee.

N.C.G.S. § 97-29.[3] The Court of Appeals held that an employer's statutory duty to provide "other treatment or care" does not extend to furnishing a residence for an injured employee. Initially, we must decide whether these statutory duties reasonably could be construed to include the duty to furnish alternate housing. We believe that they can.

We have long recognized that the Workers' Compensation Act is remedial legislation. The Act should be liberally construed to effectuate its purpose to provide compensation for injured employees or their dependents and its benefits should not be denied by a technical, narrow and strict construction. *See Gunter v. Dayco Corp.*, 317 N.C. 670, 346 S.E. 2d 395 (1986); *Cates v. Construction Co.*, 267 N.C. 560, 148 S.E. 2d 604 (1966); *Hall v. Thomason Chevrolet, Inc.*, 263 N.C. 569, 139 S.E. 2d 857 (1965).

This liberal construction in favor of claimants comports with the statutory purpose of allocating the cost of work-related injuries first to industry and ultimately to the consuming public. *Petty v. Transport, Inc.*, 276 N.C. 417, 173 S.E. 2d 321 (1970); *Vause v. Equipment Co.*, 233 N.C. 88, 63 S.E. 2d 173 (1951).

The legislature's history of expanding the medical benefits provided by N.C.G.S. § 97-29 supports our construing the statute generously in favor of claimants. When the Workers' Compensation Act was enacted, N.C.G.S. § 97-29 made no provision for medical expenses. See 1929 N.C. Sess. Laws ch. 120, § 29. N.C.G.S. § 97-25 was the only provision in the Act which obligated the employer to provide such expenses. N.C.G.S. § 97-25 required the employer to furnish:

---

3. The word "of" between care and rehabilitative services in the statute is a misprint. It should be "or." *See* 1973 N.C. Sess. Laws ch. 1308, § 2.

> Medical, surgical, hospital, . . . and other treatment, including medical and surgical supplies as may reasonably be required, for a period not exceeding ten weeks from date of injury to effect a cure or give relief and for such additional time as in the judgment of the Commission will tend to lessen the period of disability, . . . shall be provided by the employer.

1929 N.C. Sess. Laws ch. 120, § 25. Under these provisions an employer was not obligated to pay the expenses of medical treatment given more than ten weeks after the date of injury unless the additional treatment would lessen the period of disability. *See Little v. Ventilator Co.*, 317 N.C. 206, 345 S.E. 2d 204 (1986). Thus, where an employee suffered total and permanent disability, an employer was not obligated to pay medical expenses beyond a ten-week period. *See Millwood v. Cotton Mills*, 215 N.C. 519, 2 S.E. 2d 560 (1930).

The legislature filled this void in the Act in 1947 by amending N.C.G.S. § 97-29 to provide as follows:

> [I]n cases in which total disability is due to paralysis resulting from injuries to a spinal cord, compensation including reasonable and necessary medical and hospital care shall be paid during the life of the injured employee.

1947 N.C. Sess. Laws ch. 823, § 1.

In 1953 the Act was extended to make its provisions applicable to brain injuries. 1953 N.C. Sess. Laws ch. 1135, § 1. In 1971 it was extended to include the loss of hands, arms, feet, legs or eyes and to require the employer to provide other "care." 1971 N.C. Sess. Laws ch. 321, § 1. In 1973 the Act was amended to require employers to provide "rehabilitative services" in addition to "other treatment or care" and was extended to totally and permanently disabled employees without regard to the nature of their injury. 1973 N.C. Sess. Laws ch. 1308, § 2. This legislative history of continued expansion of the scope of N.C.G.S. § 97-29 and finally the inclusion of the words "other treatment or care or rehabilitative services" supports a conclusion that the legislature intends for the statute to include wheelchair accessible housing.

The decisions of this Court also support construing "other treatment or care" to include wheelchair accessible housing. In

*Godwin v. Swift & Co.*, 270 N.C. 690, 155 S.E. 2d 157 (1967), the claimant suffered a head injury which left him blind, partially paralyzed, emotionally unstable and mentally infirm. The Commission concluded that plaintiff was totally and permanently disabled and awarded medical, hospital and nursing expenses for the remainder of claimant's life. The Commission found that claimant needed around-the-clock attention and care. The Commission concluded plaintiff would be better off under the care of his brother and sister-in-law than in a nursing home. The Commission required the employer to pay the brother and his wife $65 per week as compensation for their services on the ground that these services constituted "other treatment and care" not embraced in the medical award for medical, hospital and nursing expenses. This Court upheld the Commission's award, reasoning:

> The statute makes provision for payment for named essential items and services, and adds '*other treatment or care.*' The provision for other treatment or *care* goes beyond and is in addition to the specifics set out in the statute.

*Id.* at 693, 155 S.E. 2d at 159-60.

Courts in at least two other jurisdictions with statutory provisions similar to ours have concluded that "treatment" or "care" includes the duty to furnish alternate, wheelchair accessible housing. In *Squeo v. Comfort Co.*, 99 N.J. 588, 494 A. 2d 313 (1985), the Supreme Court of New Jersey concluded that construction of a self-contained apartment "could constitute 'medical, surgical or other treatment . . . necessary to cure and' or 'other appliance' within the meaning of the applicable statute."[4] The claimant was

---

4. "N.J.S.A. 34-15:15 in pertinent part provides:

The employer shall furnish to the injured worker such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible; * * * the Division of Workers' Compensation after investigating the need of the same and giving the employer an opportunity to be heard, shall determine that such physicians' and surgeons' treatment and hospital services are or were necessary and that the fees for the same are reasonable and shall make an order requiring the employer to pay for or furnish the same.

*   *  · *   *

When an injured employee may be partially or wholly relieved of the effects of a permanent injury, by use of an artificial limb or other appliance, which

a twenty-four-year-old wheelchair-bound quadriplegic. He requested that his employer provide an apartment attached to his parent's home. After his injury, he was placed in a nursing home with predominantly elderly patients. The nursing home environment caused severe depression. Furthermore, he suffered a number of protracted physical ailments which contributed to his emotional unrest. He attempted suicide three times. Claimant testified he desired to "get on with life" but stated the institutional setting prevented him from doing so. An expert in neuropsychiatry testified on behalf of claimant that claimant had developed ways of adjusting to quadriplegia and aspired to attend college and become gainfully employed. His depression arose from a conflict between his ambitions and his perception of being trapped in a nursing home with people with whom he had nothing in common.

The New Jersey Supreme Court reviewed a number of cases from several jurisdictions before concluding:

> In sum, courts in other jurisdictions governed by statutes similar to ours have been generous in their liberal construction of the language in question. The phrases 'other treatment' and 'appliance' have assumed various forms, ranging from permanent round-the-clock nursing care to the rent-free use of a modular home.

*Id.* at 603, 494 A. 2d at 321.

The Court went on to affirm the Commission's award of alternate housing:

> Apart from his quadriplegia, which cannot be reversed, and physical complications, which are treated as they arise, Squeo has suffered serious psychological setbacks. No one disputes that these emotional problems are a result of his work-connected injury and its consequences. Nor is it disputed that Squeo's depression is so aggravated by living in the nursing home that he has tried to kill himself on three occa-

phrase shall also include artificial teeth or glass eye, the Division of Workers' Compensation, acting under competent medical advice, is empowered to determine the character and nature of such limb or appliance, and to require the employer or the employer's insurance carrier to furnish the same."

*Id.* at 596, 494 A. 2d at 317.

sions. We find these three factors — Squeo's unremitting physical ailments, his age and his having lived independently of his parents for several years prior to the accident, and his psychological dread of institutional living, culminating in three suicide attempts — are sufficient to consider this an unusual case calling for unusual relief.

*Id.* at 604-05, 494 A. 2d at 322.

In *Peace River Elec. Corp. v. Choate*, 417 So. 2d 831 (Fla. Dist. Ct. App. 1982), *review denied*, 429 So. 2d 7 (Fla. 1983), the Court upheld an award for the rent-free use of a modular home to replace a dilapidated makeshift dwelling consisting of an ancient trailer and a ramshackled wooden shed that were impossible to negotiate by wheelchair. The Court rejected the employer's proposal to remodel plaintiff's existing dwelling because "nothing short of bulldozing the dwelling would serve to remedy the situation." *Id.* at 832. However, claimant's request for alternate housing was denied where the employer had obtained rental housing for claimant and agreed to make modifications as were required. *Lane v. Walton Cottrel Assoc.*, 422 So. 2d 1023 (Fla. Dist. Ct. App. 1982). Both decisions were handed down under a statute which required the employer to furnish "remedial treatment, care and attendance."[5]

The principle which emerges from these cases is that an employer must furnish alternate, wheelchair accessible housing to an injured employee where the employee's existing quarters are not satisfactory and for some exceptional reason structural modification is not practicable. We conclude on the basis of the legislative history surrounding N.C.G.S. § 97-29, this Court's prior interpretation of that statute and the persuasive authority of other courts interpreting similar statutes that the employer's obligation to fur-

---

5. At the time of these decisions, Florida's Workers' Compensation Act provided:

"[T]he employer shall furnish to the employee such remedial treatment, care, and attendance under the direction and supervision of a qualified physician or surgeon or other recognized practitioner, nurse, or hospital and for such period as the nature of the injury or the process of recovery may require, including medicines, crutches, artificial members, and other apparatus. . . ."

Fla. Stat. Ann. § 440.13 (West 1971).

nish "other treatment or care" may include the duty to furnish alternate, wheelchair accessible housing.

In this case the Industrial Commission found as fact that plaintiff's existing quarters "are not suitable for plaintiff's needs as a permanent and totally disabled person" and "the owner of the home does not desire any changes made in his property and no changes have, therefore, been made." We believe these findings exemplify the type of unusual case which justifies the Commission's conclusion of law that "Defendant shall furnish plaintiff . . . an appropriate place for plaintiff to live in view of his condition."

Defendant contends the evidence does not support the Commission's findings that plaintiff's existing residence is not suitable to plaintiff's needs. He claims the evidence shows at most that plaintiff requests new housing because of a desire to live independently of his parents.

We disagree. As this Court stated in *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 342 S.E. 2d 798 (1986):

> The scope of appellate review of questions of fact is limited. The Industrial Commission is constituted as the fact-finding body in workers' compensation cases. *Watkins v. City of Wilmington*, 290 N.C. 276, 225 S.E. 2d 577 (1976). The authority to find facts necessary for an award is vested exclusively in the Commission. *Moore v. Electric Co.*, 259 N.C. 735, 131 S.E. 2d 356 (1963). The Commission's fact findings will not be disturbed on appeal if supported by any competent evidence even if there is evidence in the record which would support a contrary finding. *Jones v. Desk Co.*, 264 N.C. 401, 141 S.E. 2d 632 (1965). Where, however, there is a complete lack of competent evidence in support of the findings they may be set aside. *Click v. Freight Carriers*, 300 N.C. 164, 265 S.E. 2d 389 (1980); *Logan v. Johnson*, 218 N.C. 200, 10 S.E. 2d 653 (1940).

*Id.* at 432-33, 342 S.E. 2d at 803.

We believe the record contains evidence which supports the Commission's findings disputed by defendant. The evidence tends to show the following: Plaintiff's present home has not been modified to accommodate his wheelchair. The owners will not per-

mit such modification. Plaintiff cannot enter the bathroom or kitchen. As a result, he cannot use the bath or toilet facilities and he cannot prepare meals for himself. Plaintiff's physician acknowledged that plaintiff needs architecturally modified housing. We believe this evidence supports the Commission's finding of fact that plaintiff's present residence is not satisfactory.

For all the reasons stated above the decision of the Court of Appeals is reversed and this case is remanded with instructions for further remand to the Industrial Commission in order that it may re-enter its award for wheelchair accessible housing and calculate plaintiff's average weekly wage using a method of computation consistent with the principles stated in this opinion.

Reversed and remanded.

Justice BILLINGS dissenting in part and concurring in part.

I dissent from Part III of the majority opinion.

In concluding that the defendant must provide wheelchair-accessible housing to the plaintiff, the majority says that this is an "unusual case," apparently assuming that the decision will have limited applicability. I find nothing very unusual about a young man desiring to move out of his parents' home to live independently. Neither is it unusual for a wheelchair-bound individual to need wheelchair-accessible housing. The fact that the owner of the plaintiff's parents' present home will not permit alteration of the house does not establish such an "unusual" event as to justify imposing upon the defendant an obligation that he otherwise would not have. The preference of the plaintiff's parents to continue renting this particular house which is unsuitable for their son, added to his perfectly natural desire to live independently, is no basis for requiring the defendant to assume the total cost of alternative housing for the plaintiff.

The Workers' Compensation Act provides disability compensation as a substitute for lost wages. That substitute for wages is the employer's contribution to those things which wages ordinarily are used to purchase—food, clothing, *shelter*, etc. There is no provision in the Workers' Compensation Act for the employer, in addition to providing the statutory substitute for wages, to provide the ordinary necessities of life, although in addition to week-

ly compensation based upon the employee's wages the employer must provide compensation for "reasonable and necessary nursing services, medicines, sick travel, medical, hospital, and other treatment or care [or] rehabilitative services." N.C.G.S. § 97-29 (1985). To construe "other treatment or care" to include basic housing is not a "liberal construction," 318 N.C. 192, 199, 347 S.E. 2d 814, 819, of the statute; it is clearly a misconstruction. If housing is the kind of "treatment or care" intended by the statute, are not food, clothing and all of the other requirements for day-to-day living equally necessary for the employee's "treatment or care"? In the context of the Workers' Compensation Act, the "treatment or care [or] rehabilitative services" clearly relate to those necessitated by the employee's work-related injury.

The majority's discussion of the history of N.C.G.S. § 97-29 clearly indicates the limitation intended by the General Assembly. Although originally limited to *medical* and *hospital* care necessitated by paralysis resulting from injuries to the spinal cord (slip op. p. 11), the Act was expanded to include disability from other causes and to expand the kind of care or treatment allowed so that it would not be limited to treatment or care provided in a hospital. None of these amendments expanded the statute to include anything beyond the care, treatment or rehabilitative services related to the employee's medical condition. If the care, treatment or rehabilitative services appropriate for the employee's condition necessitate residence in a special facility, such as a nursing home, hospital or rehabilitation center, the employer must pay for the entire cost, including residence at the facility, because residence there is part and parcel of the treatment, care or rehabilitative services.

An analysis of the case of *Squeo v. Comfort Control Corp.*, 99 N.J. 588, 494 A. 2d 313 (1985), relied upon by the majority, shows the inapplicability of that case to the present one, even if we were persuaded by its reasoning. In that case, the treating physician described the plaintiff's history and condition as follows:

> [Claimant] has had a terribly hard time. The man has had just about every complication that God ever put on this earth for him . . . . [T]he first year was devastating . . . because he went out of one problem into another and then when we saw him, immediately we had to do something to his urinary tract

and surgery and then . . . we had problems with skin break-downs, rashes, you name the complications, this poor fellow had it. Then he developed a curvature of the spine and [had to have] corrective surgery and . . . he's had one medical difficulty after another.

*Id.* at 591, 494 A. 2d at 315.

Further evidence established that the plaintiff had lived independently of his parents for several years before his accident. After the accident, he was confined to a nursing home which was occupied primarily by elderly patients. Claimant became severely depressed as a result of the institutional living and nursing home environment and, on three occasions while in the nursing home, attempted suicide. The testimony of an expert in neuropsychiatry established that, whereas claimant had adjusted to his quadriplegia and wanted to get on with his life by attending college and becoming employed, he became and remained depressed by "the conflict between his ambitions and his perception of his future in the nursing home with older people with whom he had nothing in common." *Id.* at 592, 494 A. 2d at 315. The physician testified further that claimant believed life in a nursing home was not worth living and that claimant would continue to attempt suicide as long as he remained in the nursing home. Even then, the court only required that a suitable addition be added to the claimant's parents' home because under the facts of the case the apartment was a reasonable and necessary *medical* expense (necessary for the claimant whose condition required *care*, not independence). The court additionally required that the employer's interest in the house be secured by a mortgage executed by the claimant's parents "so that if Squeo should no longer use the apartment, the employer would be compensated for any significant value the apartment may add to the property in the event it is sold, rented, or mortgaged." *Id.* at 596, 494 A. 2d at 317.

The attempt by the plaintiff to rely upon that portion of N.C. G.S. § 97-29 which requires the employer to provide "rehabilitative services" likewise fails. In the first place, a common-sense interpretation of the words makes it obvious that "services"[1] does

---

1. "1. The occupation or duties of a servant. 2. Employment in duties or work for another; especially, such employment for a government . . . . 6. Work done for

not include housing. Additionally "rehabilitation falls under two major headings: physical and vocational," 2 *A. Larson, The Law of Workmen's Compensation* § 61.21 (1986), and the providing of housing to the plaintiff will result in neither his medical nor vocational rehabilitation.

In the case *sub judice,* if we assume that the evidence supports a conclusion that it would be best for the plaintiff to live independently, I submit that (1) the need for the plaintiff to live independently is nothing more than the natural desire of a young man upon reaching his early 20s to establish his own life independent of his parents and is not the effect of his injury, and (2) the only features of the plaintiff's proposed new residence which are necessitated by his injury are those which make it wheelchair-accessible. If we construe the statute to impose any obligation upon the employer to aid the plaintiff in establishing his independence from his parents, it should be only to alter housing provided by the plaintiff to make it suitable to his special needs, i.e., wheelchair-accessible—an obligation which the defendant has consistently been willing to assume.

I concur in the remainder of the Court's opinion.

Chief Justice BRANCH and Justice MEYER join in this dissenting opinion.

---

others as an occupation or business . . . . 11. An act of assistance or benefit to another or others; favor . . . ." The American Heritage Dictionary, New College Edition (1980).