The facts of this case required the hearing Deputy to make credibility determinations to resolve key issues. Her decision was supported by more circumstantial evidence than the Commission can normally look to in such cases. While plaintiff's counsel was surely sincere in his suspicion of bias, there is nothing in this record, or otherwise, that supports it.
Consequently, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor MODIFICATION of Findings of Fact numbers 3, 5 and 6.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except as noted herein above, the Full Commission makes the following FINDINGS OF FACT:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. That a Form 24 was approved in this matter on April 3, 1991.
2. That pursuant to the Form 21 Agreement previously approved in this matter, plaintiff received temporary total disability compensation benefits from October 11, 1990 up to and including April 24, 1991.
* * * * * * * * * * *
FINDINGS OF FACT
1. Plaintiff is a thirty-seven year old high school graduate with three years of college who sustained an admittedly compensable injury to her back on October 6, 1990 arising out of and in the course of her employment with defendant-employer. Plaintiff became employed with defendant-employer as a truck driver on July 16, 1990. Prior to beginning employment with defendant-employer, plaintiff had an extensive work history of performing sedentary type work as a telephone operator and switchboard operator.
2. On October 6, 1990, while engaged in her driving duties, plaintiff hit a pothole in the road when traveling approximately forty-two miles per hour resulting in a jerking of her body first forward then backward.
3. Approximately seven hours following this incident, plaintiff experienced a sensation of overall body pain. She initially sought chiropractic treatment. Upon her return to the Wilmington area, she first saw Dr. Snyder, who thereafter referred her to Dr. Coin. During examination by Dr. Coin, whose testimony was taken for this case by deposition, plaintiff demonstrated limited range of neck motion and pain upon straight leg raising on the right which Dr. Coin felt could be due either to pain or failure to exhibit a full effort. Examination furthermore indicated a non-physiological aspect to plaintiff's complaints in that she reported a complete right body sensory loss upon examination attributable to a psychological involvement of either hysteria or malingering.
4. However, in light of her reported history and complaints, Dr. Coin referred plaintiff for CT scans of the brain and cervical spine, which were unremarkable. Thereafter, plaintiff was referred for cervical and lumbar myelograms which were performed on November 8, 1990 and revealed minimal disc bulging at the C5-C6, and C6-C7 levels; moderate disc bulging at the L4-5 level associated with mild degenerative changes; and a small right L5-S1 disc bulge and probable small right L5-S1 foraminal herniation which, if present, could cause sciatic pain descending into plaintiff's right leg. Conservative treatment was initiated consisting of bed rest and medication.
5. Plaintiff was thereafter referred for evaluation to Dr. Bachman, whose testimony for this case was taken by deposition. During his examination of April 9, 1991, plaintiff complained of constant excruciating pain and moaned and groaned upon movement. Dr. Bachman noted an unusual response during his examination of plaintiff during straight leg raising testing on the right. Dr. Bachman also noted that plaintiff's subjective complaints upon sensory examination on the right were not of a physiologic nature in that plaintiff related sensory changes in areas incompatible with the nerve distribution of the right lower extremity.
6. Following the compensable injury of October 6, 1990, although plaintiff did not return to work for defendant-employer, she did obtain other employment. In November 1990, plaintiff returned to New York to visit over the Thanksgiving holidays and upon her return to North Carolina in December, 1990, plaintiff moved into a mobile home owned by a Mrs. McKoy, who also ran a boarding house for elderly people which was located less than a block from plaintiff's mobile home. On March 8, 1991 private investigator Marilyn Ross contacted Ms. McKoy, who related that plaintiff was employed by the boarding house prior to working for the defendant, but was rehired in the latter part of 1990 at $4.80 per hour in the position of assisting patients, dressing and feeding them, for five days per week on weekdays and occasionally on Saturdays and Sundays, when needed. This account, when taken with other evidence, is credible. Therefore, in 1990, plaintiff began working full time for Mrs. McKoy caring for the elderly boarders. Plaintiff was capable of performing the duties of this position, including dressing and feeding the elderly boarders. Plaintiff continued to be so employed at least through March 8, 1991. Plaintiff's testimony, and that of Mrs. McKoy and Ms. Graham, a "volunteer" at the boarding house, to the contrary is not deemed credible. Ms. Graham, whose deposition was taken after the hearing as well as another lay witness, said she had worked for Ms. McKoy for approximately three years without pay as a "volunteer," but that Mrs. McKoy sometimes gave her food when she had none to feed her four children. Ms. Graham stated that prior to her "volunteer" time with Mrs. McKoy, she had worked for social services for pay doing much the same work as she did for Ms. McKoy. Upon cross examination, she admitted that sometimes the "volunteers" or workers did not sign the sign-in sheet at the boarding house for attendance. Therefore, there was no credible way of using the list to determine who really worked there at any given time.
7. Beginning October 1, 1991, plaintiff was engaging in full time employment for another employer, which she ceased on December 12, 1991 due to reasons unrelated to the injury giving rise to this claim. This employer was located approximately ten miles from plaintiff's residence, and plaintiff drove the twenty miles round trip daily in addition to performing the job duties required of her in this position.
8. In addition to the aforementioned work activities, plaintiff has also continued to care for her personal needs and those of her young son, which included driving her son to school, camping activities, grocery shopping, and driving to the laundromat. In light of plaintiff's demonstrated ability to engage in activities which are inconsistent with her reported complaints and her non-physiologic responses during examination, her complaints of disabling pain during medical examinations and at the hearing are not deemed credible.
9. Plaintiff has misrepresented her physical capabilities and activities as evidenced by her moaning and groaning so as to be heard in the next room when being examined by Dr. Bachman. Plaintiff's complaints of pain to both Drs. Coin and Bachman, which formed the basis for their evaluations and treatments rendered and proposed, are not deemed credible. Dr. Bachman and Dr. Coin's opinions regarding plaintiff's ability to engage in work activities and need for further medical treatment were based on plaintiff's subjective complaints. As these complaints are not deemed credible, the expert opinions on those issues are not persuasive evidence.
10. As the proposed treatment recommended by Drs. Coin and Bachman is intended for the relief of complaints of pain which plaintiff had misrepresented experiencing, such evaluations and treatments would not provide relief, effect a cure, or lessen plaintiff's disability.
11. Since plaintiff's return to work in 1990, plaintiff has been capable of earning wages. Plaintiff has failed to prove that any loss of earnings after her return to work in 1990 resulted from the injury giving rise to this claim.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following additional
CONCLUSIONS OF LAW
1. Plaintiff was entitled to temporary total disability compensation benefits at the rate of $166.67 per week from October 11, 1990 continuing until her return to work in December, 1990 for the disability she sustained as a result of this injury by accident. N.C.G.S. § 97-2 (9); N.C.G.S. § 97-29;Watson v. Winston-Salem Transit Authority, 92 N.C. App. 473,374 S.E.2d 483 (1988); Tucker v. Lowdermilk, 318 N.C. 192,347 S.E.2d 814 (1986); See also, Bridges v. Linn — Corriher Corporation,90 N.C. App. 397, 368 S.E.2d 388, disc. review denied, 323 N.C. 171,373 S.E.2d 104 (1988).
2. After her return to work in December 1990, plaintiff was not disabled and is not entitled to additional compensation benefits for temporary total disability as a result of the injury giving rise to this claim. Defendants are entitled to a credit against any compensation hereinafter awarded equal to the temporary total disability benefits paid to plaintiff from January 1, 1991 (as the exact date of plaintiff's return to work in 1990 is unknown) through April 24, 1991. N.C.G.S § 97-42.
3. The treatments as recommended by Drs. Bachman and Coin would not tend to effect a cure, give relief or lessen plaintiff's disability. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the rate of $166.67 per week for the period October 11, 1990, until January 1, 1991, subject to a credit for compensation already paid plaintiff by defendants.
2. Defendants are awarded a credit for temporary total disability compensation benefits paid plaintiff from January 1, 1991 through April 24, 1991.
3. An attorney's fee in the amount of $2,500.00 is hereby approved for plaintiff's counsel which counsel for plaintiff may collect directly from plaintiff.
4. Defendants shall pay to Dr. Bachman an expert witness fee in the amount of $150.00.
5. Each side shall pay its own costs.
 S/ _______________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _____________________ COY M. VANCE COMMISSIONER
S/ _____________________ FORREST H. SHUFORD, II SPECIAL DEPUTY COMMISSIONER
JRW/jss 1/27/95