***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding good grounds to receive further evidence, the Full Commission, upon reconsideration of the evidence, vacates the Opinion and Award of the deputy commissioner, enters the following Interlocutory Opinion and Award based upon the evidence presented and reopens the record for additional evidence.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the deputy commissioner as:
 STIPULATIONS
1. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between the employer and the employee on or about July 13, 2000, the date of this alleged compensable injury reflected on I.C. File No. 079693.
2. Winston-Salem Housing Authority was a self-insured employer.
3. A Form 63 Agreement was executed, under the terms of which the employee has been paid compensation, in the amount of $445.35 per week, for temporary total disability from July 14, 2000 and continuing. (Note: The average weekly wage and compensation rate were modified pursuant to the partial settlement agreement reached after the hearing before the Deputy Commissioner.)
4. On July 13, 2000 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
5. The employee has been out of work since July 13, 2000.
6. In addition, the parties stipulated into evidence defendant's answers to plaintiff's interrogatories.
 ***********
Based on the foregoing stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was sixty-six years old. Defendant, Winston-Salem Housing Authority, employed him for over twenty-three years as a carpenter in the maintenance department. As of July 13, 2000, his average weekly wage was $728.48.
2. On July 13, 2000, plaintiff sustained a compensable injury by accident when he fell while coming down stairs and hit his head on a nearby bush, causing a hyperextension injury to his neck. As a result of the accident, plaintiff sustained a spinal cord injury that left him paralyzed. After initial treatment at North Carolina Baptist Hospital, he was transferred on July 28, 2000, to Whitaker Rehabilitation Center where Dr. James M. McLean, a physiatrist, assumed his care.
3. During the month plaintiff was at the rehabilitation center, he was provided physical therapy, occupational therapy, psychological counseling and other rehabilitation services. Plaintiff's spinal cord injury is incomplete, so his function improved dramatically. By December 2000, plaintiff progressed from being bedridden and unable to move his arms and legs to being able to walk over 200 feet with a walker and foot orthosis. At the time of his discharge on December 18, 2000, he was bowel and bladder continent; he could maneuver himself with a wheelchair and he just needed assistance for limited activities, such as lower body dressing.
4. After discharge from the rehabilitation center, plaintiff was transferred to an assisted living facility, which has changed names several times since December 2000. On the date of hearing before the deputy commissioner, the assisted living facility was called Oakdale Heights. Plaintiff has his own one-bedroom suite with a separate living area and kitchenette. Meals are available for him in the facility dining room, but plaintiff has also regularly prepared some of his own meals in his suite. Plaintiff receives daily assistance with bathing and dressing in the morning and with getting ready for bed at night. The facility has been well maintained and the care provided to plaintiff has been good; however, plaintiff has not felt part of the community there since he is younger than most of the other residents.
5. Dr. James M. McLean, a specialist in physical medicine and rehabilitation, is of the opinion that since at least June 2001 plaintiff has been capable of living independently in his own home or some other independent living facility, provided the dwelling is handicapped accessible and necessary attendant care services are available. He also opined that plaintiff would benefit from additional physical and occupational therapy.
6. Plaintiff has owned a home for an unknown period of time, predating his injury. Plaintiff wants to live in his own home and neighborhood where he has relatives and friends nearby.
7. It is no longer medically necessary for plaintiff to live in an assisted living facility. He is capable of living independently in his own home with some attendant care provided on a daily basis.
8. Defendant is obligated to provide reasonable modifications to plaintiff's home to accommodate his physical limitations caused by his compensable injury, if modification is feasible. Plaintiff's home has a three-level split design. An assessment has been made to determine if plaintiff's home can be reasonably modified. Further evaluation is needed to make a final determination on this issue.
9. If modifications to plaintiff's home would not be feasible, defendant is obligated to provide plaintiff with housing facilities that fit his desire to live as independently as possible. A handicap accessible apartment in the general community would be a reasonable alternative. Defendant shall place plaintiff's name on the waiting list for a handicapped accessible apartment immediately while they evaluate the feasibility of modifying his existing home.
10. Defendant retained Betsy Miall, a certified life care planner, to evaluate plaintiff's current living situation and to look into other housing options. Ms. Miall found that Oakdale Heights was very clean and well decorated, transportation for the residents was provided and that there was nothing about the facility that would keep her from recommending it. She also found some handicapped apartments in the area, but they all had lengthy waiting lists. As of the date of hearing, Ms. Miall had not located another suitable place for plaintiff to live and plaintiff's name had not been placed on the waiting list for a handicapped accessible apartment.
11. Ms. Miall testified that before a final recommendation regarding housing would be made, information was needed from Dr. McLean regarding whether plaintiff's condition would likely deteriorate. She was concerned that with advancing age, he could naturally become more dependent on attendant care and less able to care for himself. Dr. McLean testified that plaintiff's chances of continuing to improve were fairly good because his spinal cord injury was incomplete.
12. Plaintiff needs assistance with dressing himself in the morning and getting ready for bed in the evening. These attendant care services may be provided by a family member, friend, or a certified nursing assistant.
13. Plaintiff is able to drive himself with appropriate hand controls. Plaintiff has requested that defendant buy a van for him and modify it for use with a wheelchair. Defendant has paid Oakdale Heights to provide transportation services for plaintiff but learned for the first time at the hearing that plaintiff had not been using those services because there was an incident in the facility van years earlier when he fell out of his wheelchair because it was not properly secured to the van. Plaintiff had not reported a problem with facility provided transportation to defendant. Instead, he had gotten family members to drive him to doctors' appointments. His daughter-in-law has been the primary person to take him to his appointments. She has never requested that defendant reimburse her for the mileage involved. The evidence of record did not disclose the specifics regarding her mileage and the times she transported plaintiff. Defendant has expressed willingness to reimburse her for documented mileage.
14. Defendant is not obligated to purchase a vehicle for plaintiff, but would be obligated to modify any vehicle plaintiff purchases for his own transportation to make it accessible to plaintiff's needs.
15. Although the Pre-Trial Agreement listed reimbursement of family members for attendant care provided as an issue, no evidence was presented on this issue. Therefore, this issue is reserved for future determination.
16. Defendant has moved that attorney's fees be assessed against plaintiff for unreasonable prosecution of the claim. In view of the issues involved in this claim, plaintiff had good grounds to pursue the hearing. Plaintiff's desire to live independently in his own home and to seek a determination from the Industrial Commission compelling defendant to modify his home or provide alternative, suitable housing outside of an assisted living facility where he can live more independently was not frivolous, and did not constitute stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff is capable of living independently in his own home if it can be reasonably modified to suit his physical limitations caused by his compensable injury, or in a suitable independent living facility such as a handicapped accessible apartment.
2. Plaintiff is entitled to have defendant provide suitable, handicapped accessible housing. Defendant is first obligated to provide reasonable modifications to plaintiff's existing home to accommodate his physical limitations caused by his compensable injury, if modifications can reasonably be made. N.C. Gen. Stat. §§ 97-2(9); 97-25; Derebery v. PittCounty Fire Marshall, 318 N.C. 192 (1986); Timmons v. North CarolinaDepartment of Transportation, 123 N.C. App. 456 (1996), aff'd per curiam,346 N.C. 173 (1997). If modifications can not be made to plaintiff's home, defendant is obligated to provide plaintiff housing in a handicapped accessible apartment which reasonably suits his need and desire to live as independently as possible.
3. Plaintiff is also entitled to have defendant provide necessary transportation. Should plaintiff decide to purchase a vehicle, defendant is required to modify the vehicle to suit plaintiff's physical limitations. N.C. Gen. Stat. §§ 97-2(9); 97-25; Derebery v. Pitt CountyFire Marshall, 318 N.C. 192 (1986); Timmons v. North Carolina Departmentof Transportation, 123 N.C. App. 456 (1996), aff'd per curiam, 346 N.C. 173
(1997).
4. Defendant is obligated to provide reasonably necessary attendant care services to plaintiff which shall include, but is not limited to assistance in the morning and evening and reimbursement to caregivers for reasonably necessary transportation.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall provide plaintiff with handicapped accessible housing which will allow him to live independently outside of an assisted living facility.
2. Defendant shall provide reasonably necessary attendant care services to plaintiff which shall include, but is not limited to assistance in the morning and evening and reimbursement to caregivers for reasonably necessary transportation.
 ORDER
The record herein is reopened for receipt of additional evidence. Defendant is allowed 45 days to determine whether plaintiff's home can be renovated to fit his physical restrictions caused by his compensable injury and whether reasonable arrangements can be made to allow plaintiff to live at home with appropriate attendant care. In the interim, defendant shall place plaintiff's name on the waitlist for a handicapped accessible apartment immediately. The parties are allowed within this 45-day period to supplement the record if they desire to address transcription problems. The parties shall notify the Full Commission if they determine that additional testimony is needed to supplement the record. The Full Commission will then determine whether to remand the matter to a deputy commissioner to take evidence. The Full Commission retains jurisdiction over this case.
This the ___ day of June 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN