***********
Upon review of the competent evidence of record with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** DEFENDANTS' MOTION TO SUPPLEMENT RECORD BEFORE FULL COMMISSION
Defendants' moved, pursuant to N.C. Gen. Stat. § 97-85 and Rule 701 of the Workers' Compensation Rules of the North Carolina Industrial Commission, for an Order allowing the re-opening *Page 2 
of the record in this matter to include additional evidence in the form of a copy of Plaintiff's lease agreement for his current apartment residence, on the grounds that such documentation provides further evidence that the Deputy Commissioner utilized an incorrect method of determining the amount of Plaintiff's rent for which Defendants are responsible. Plaintiff indicated, both in writing and orally, that he did not object to Defendants' Motion. After consideration of the written and oral arguments of Defendants, the Full Commission GRANTS Defendants' Motion to Supplement Record before Full Commission. Accordingly, the copy of Plaintiff's lease agreement for his current apartment residence attached to Defendants' Motion shall be attached to the end of the exhibits.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all times relevant to these proceedings.
2. An employment relationship existed between the parties at all times relevant to these proceedings.
3. Defendant-Employer had workers' compensation insurance coverage with Defendant-Carrier at all times relevant to these proceedings.
4. Plaintiff's average weekly wage is $941.24.
5. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement; *Page 3 
 b. Stipulated Exhibit Two: Plaintiff's medical records;
 c. Stipulated Exhibit Three: North Carolina Industrial Commission forms and filings;
 d. Stipulated Exhibit Four: Plaintiff's rehabilitation records;
 e. Plaintiff's Exhibit One: Correspondence from Ms. Julie Robbins dated March 22, 2010 and accompanying documentation;
 f. Plaintiff's Exhibit Two: Portions of "Residential Lease Agreement" between Plaintiff and Southwood Realty Co. d/b/a Mills Creek dated November 21, 2009;
 g. Defendants' Exhibit One: Photographs of modifications done on the home of Mr. and Mrs. Brad and Patty Wright;
 h. Defendants' Exhibit Two: Copy of check in the amount of $19,713.23 from Defendant-Employer to Toyota of Lake Norman dated June 24, 2008 and accompanying documentation.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff is entitled to additional medical compensation in the form of assistance with the payment of rent for housing in a handicapped-accessible apartment with sufficient room for his medical appliances and supplies?
2. Whether Plaintiff is entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1?
 *********** *Page 4 
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 29 years old, with a date of birth of October 19, 1981. Although originally from Hazelton, Pennsylvania, Plaintiff has been living in the Charlotte, North Carolina area since July 2004. Plaintiff's family continues to reside in Hazelton, Pennsylvania. As of the date of the hearing before the Deputy Commissioner, Plaintiff was living in the Mill's Creek Apartments in Gastonia, North Carolina.
2. On April 3, 2008, Plaintiff was working for Defendant-Employer as a dump truck driver and as an assistant equipment operator on a project involving clearing a lot for a new home. Plaintiff drove a dump truck filled with logs from the land-clearing project to a saw mill. When Plaintiff released the straps securing the load of logs at the saw mill, a log rolled off and landed on him, causing severe injuries.
3. As a result of the injuries Plaintiff sustained, he became a paraplegic and is now paralyzed below the waist. Plaintiff underwent surgery and initially remained in the hospital due to his injuries from April 3, 2008 through April 14, 2008. Thereafter, Plaintiff was an inpatient in a rehabilitation facility until May 7, 2008.
4. Prior to Plaintiff's April 3, 2008 work injury, he shared a third-floor apartment that was only accessible by stairs with Mr. David Webb. The rent for this apartment was $829.00 per month, which Plaintiff and Mr. Webb split equally. Following Plaintiff's April 3, 2008 work injury, he was unable to return to the third-floor apartment that he shared with Mr. Webb because he could no longer climb the stairs to gain access to it. Instead, Plaintiff moved into a home owned by Mr. and Ms. Brad and Patty Wright, friends of Plaintiff's girlfriend at the *Page 5 
time. Mr. Wright previously recovered from an injury similar to the one Plaintiff sustained, and the Wright family offered to help Plaintiff during his recovery.
5. At the Wright home, Mr. Don McGee, one of Defendant-Employer's owners, provided and paid for materials and a construction crew to modify the living room in order to accommodate Plaintiff's condition and to serve as his bedroom. The modifications included excavating and pouring a sidewalk that ran from the parking area to the rear of the Wright's home, cutting and installing two handicapped-accessible doorways, building a ramp, and re-fitting a bathroom. Defendant-Carrier did not pay for these modifications.
6. According to Plaintiff, living at the Wright's home made his transition away from inpatient rehabilitation more comfortable in that he received companionship, meals, physical assistance, and substantial psychological support. Plaintiff always intended his stay with the Wrights to be temporary. In October or November 2008, Plaintiff decided that it was time to leave the Wright home. By this time, Plaintiff had a sufficient level of confidence in his ability to be self-sufficient to live on his own.
7. Plaintiff located a handicapped-accessible, two-bedroom apartment at the Marquis apartment complex in Huntersville, North Carolina that rented for $779.00 per month. Once Plaintiff located the handicapped-accessible, two-bedroom apartment at the Marquis apartment complex, Ms. Sheila Faeth, Defendants' adjuster, requested that Ms. Jennifer Burton, a registered nurse and certified case manager, inspect the apartment to assure that it met Plaintiff's needs. At Ms. Burton's deposition, she stated, and the Full Commission finds as fact, that the apartment Plaintiff located at the Marquis apartment complex was suitable for his needs.
8. Defendants provided Plaintiff with a check for $5,000.00 that approximated a year's difference between his rental obligations prior to his April 3, 2008 work injury and his *Page 6 
rent at the Marquis apartment complex. This $5,000.00 payment served as a settlement advance with the provision that if at some point in the future the North Carolina Industrial Commission concluded that Defendants are responsible for additional rental costs due to Plaintiff's April 3, 2008 work injury, the advanced funds would be credited to such amounts due. If the Industrial Commission concluded that Defendants were not responsible for any further rental costs, the advanced amount would be credited towards any future settlement.
9. Due to the amount of equipment, medical supplies, and mobility-assisting devices that Plaintiff required, it was not reasonable for Plaintiff to seek a roommate to help defray the cost of rent in the apartment at the Marquis apartment complex. Plaintiff used his second bedroom to store his various equipment, supplies, and devices. The larger equipment Plaintiff required as a result of his April 3, 2008 work injury included a three-wheel hand cycle referred to as a "trainer" that allowed him to exercise, a walker, a power scooter, multiple types of braces, forearm crutches, and a special wheelchair that he could use to play tennis.
10. When the end of Plaintiff's lease term at the Marquis apartment complex was approaching, he searched for a new residence, and located a handicapped-accessible, two-bedroom apartment at Mills Creek Apartments in Gastonia, North Carolina. Plaintiff's rent at Mills Creek Apartments is $699.00 per month, $80.00 less than at the Marquis apartment complex. Plaintiff's apartment at Mills Creek Apartments is larger than his previous one, particularly with respect to the bathroom. However, with the amount and size of Plaintiff's various equipment, supplies, and devices that he requires as a result of his April 3, 2008 work injury, having a roommate continues to be unrealistic.
11. Ms. Fran Parker, another registered nurse and certified case manager hired by Defendants, was of the opinion at her deposition that Plaintiff needed a second bedroom to store *Page 7 
his various equipment, supplies, and devices, and that having clear pathways and living space was crucial to prevent falls and increase maneuverability and also independence. Ms. Burton was also of the opinion that it was reasonable for Plaintiff to have a second bedroom to store his various equipment, supplies, and devices. The Full Commission gives great weight to the opinion testimony of Ms. Burton and Ms. Parker regarding Plaintiff's need for a handicapped-accessible, two-bedroom apartment to provide space to store his special equipment, supplies, and devices that he requires as a result of his April 3, 2008 work injury.
12. Dr. William Michael Scelza, a physical medicine and rehabilitation specialist with a sub-specialty in spinal cord injury medicine who is Plaintiff's treating physician, opined that having adequate space to store and use his various equipment, supplies, and devices serves a medical and rehabilitative function for Plaintiff. Being able to easily access such equipment, supplies and devices provides Plaintiff with the ability to maintain good physical health because he would be more likely to use such equipment, supplies and devices more frequently. Dr. Scelza further opined that logistically, having a second bedroom to store Plaintiff's various equipment, supplies, and devices also provides safe access to such equipment and assists Plaintiff in maintaining a positive psychological outlook. Having a room separate from Plaintiff's general living quarters to keep these items avoids unnecessary clutter that would affect the safety of his living environment.
13. The Full Commission gives great weight to the opinions of Dr. Scelza and finds as fact that for rehabilitation, safety and good health purposes, it is reasonably necessary for Plaintiff to have a place to store his medical equipment, supplies, and devices close enough for him to have easy access. The Full Commission further finds that a two-bedroom apartment which allows Plaintiff to have a separate bedroom from his general living quarters to store and *Page 8 
have easy access to his medical equipment, supplies, and devices is reasonably required to lessen his disability.
14. The Full Commission finds that the additional cost Plaintiff incurs to rent a handicapped-accessible, two-bedroom apartment to store his medically necessary equipment, supplies, and devices is the direct and natural result of and causally related to his April 3, 2008 admittedly compensable work injury that rendered him a paraplegic. The Full Commission further finds that Plaintiff's need for an additional bedroom to store his various equipment, supplies, and devices separate from his general living quarters is medical compensation under N.C. Gen. Stat. § 97-25.
15. The Full Commission finds that it would be reasonable under the circumstances for Defendants to pay for half of Plaintiff's cost in renting a handicapped-accessible, two-bedroom apartment from the time he first moved into an apartment following his April 3, 2008 work injury. The Full Commission further finds that the handicapped-accessible, two-bedroom apartment Plaintiff lived in at the Marquis apartment complex and that he currently lives in at Mills Creek Apartments are both reasonable and appropriate housing for Plaintiff under the circumstances.
16. Defendants had reasonable grounds to defend this claim, as some of the medical and other evidence was in dispute.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 9 
1. On April 3, 2008, Plaintiff sustained an admittedly compensable injury by accident resulting in him becoming a paraplegic. N.C. Gen. Stat. § 97-2(6).
2. The North Carolina Industrial Commission has the authority under N.C. Gen. Stat. § 97-25 to "order such further [medical] treatments as may in the discretion of the Commission be necessary," with the cost to be borne by the defendants in workers' compensation claims. Furthermore, the Full Commission may "at any time . . . order a change in treatment and designate other treatment suggested by the injured employee. . . ." N.C. Gen. Stat. § 97-25. The "other treatment" referenced in N.C. Gen. Stat. § 97-25 includes the providing by the defendants in workers' compensation claims of appropriate housing and housing modifications for plaintiffs rendered wheelchair-bound by a compensable work injury. N.C. Gen. Stat. § 97-25; Derebery v. PittCounty Fire Marshall, 318 N.C. 192, 347 S.E.2d 814 (1986).
3. In Derebery v. Pitt County Fire Marshall, the Supreme Court of North Carolina, after a long discussion on the history and development of the case law in this area, held that "[t]he principle which emerges from these cases is that an employer must furnish alternate, wheelchair-accessible housing to an injured employee where the employee's existing quarters are not satisfactory and for some exceptional reason structural modification is not practicable."Derebery, 318 N.C. 192, 203, 347 S.E.2d 814, 821 (1986). The costs associated with providing housing "to accommodate one with extraordinary needs occasioned by a workplace injury . . . is not an ordinary expense of life for which the statutory substitute wage is intended as compensation." Timmons v. N.C. Department ofTransportation,123 N.C. App. 456, 462, 473 S.E.2d 356, 359 (1996), aff'd percuriam, 346 N.C. 173, 484 S.E. 2d 551 (1997).
4. It is medically and reasonably necessary for Plaintiff to have a handicapped-accessible, two-bedroom apartment. Plaintiff needs a place to which he has easy access to store *Page 10 
his various equipment, supplies, and devices that he requires as a result of his April 3, 2008 work injury. Plaintiff's need for an additional bedroom to store his various equipment, supplies, and devices that he requires as a result of his April 3, 2008 work injury is medical compensation. N.C. Gen. Stat. § 97-25.
5. The additional cost Plaintiff incurs to rent a handicapped-accessible, two-bedroom apartment to store his medically necessary equipment, supplies, and devices is the direct and natural result of and causally related to his April 3, 2008 admittedly compensable work injury that rendered him paralyzed below the waist. N.C. Gen. Stat. § 97-25; Roper v. J.P.Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983).
6. It would be reasonable under the circumstances for Defendants to pay for half of Plaintiff's cost in renting a handicapped-accessible, two-bedroom apartment to store his medically necessary equipment, supplies, and devices dating from the time that he first moved into an apartment following his April 3, 2008 work injury. The handicapped-accessible, two-bedroom apartment Plaintiff lived in at the Marquis apartment complex and that he currently lives in at Mills Creek Apartments are both reasonable and appropriate housing for Plaintiff under the circumstances. N.C. Gen. Stat. § 97-25; Derebery,318 N.C. 192, 203, 347 S.E.2d 814, 821 (1986); Timmons,123 N.C. App. 456, 462, 473 S.E.2d 356, 359 (1996), aff'd percuriam, 346 N.C. 173, 484 S.E. 2d 551 (1997).
7. Defendants are entitled to a $5,000.00 credit for payments previously made toward Plaintiff's housing since he first moved into an apartment following his April 3, 2008 work injury. N.C. Gen. Stat. § 97-42.
8. Defendants had reasonable grounds to defend this claim, as some of the medical and other evidence was in dispute. N.C. Gen. Stat. § 97-88.1. *Page 11 
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay medical compensation directly to Plaintiff consisting of 50 percent of Plaintiff's cost in renting a handicapped-accessible, two-bedroom apartment to store his medically necessary equipment, supplies, and devices dating from the time that he first moved into an apartment following his April 3, 2008 work injury and continuing until further Order of the North Carolina Industrial Commission. Defendants are entitled to a $5,000.00 credit for payments previously made toward Plaintiff's housing.
3. Plaintiff's request for attorney's fees under N.C. Gen. Stat. § 97-88.1 is denied.
4. Defendants shall pay the costs of these proceedings.
This the ___ day of April 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1